A11A2117. VAUGHAN et al. v. ACCC INSURANCE COMPANY.
(725 SE2d 855)

BARNES, Presiding Judge.
Johnny and Betty Vaughan sued ACCC Insurance Company, alleging that the company acted in bad faith by failing to pay a

---

judgment they obtained in a personal injury suit against ACCC's insured. ACCC responded that it was not liable for the judgment because it had withdrawn coverage after its insured failed to cooperate in the investigation and defense of the underlying claim. The trial court denied the parties' cross-motions for summary judgment, and the case went to trial. After three-and-a-half days of testimony and argument, the jury returned a defense verdict.

The Vaughans appeal, contending the trial court erred in denying their motion for summary judgment. They also allege that the evidence at trial was insufficient and that the trial court made errors involving the admission or exclusion of evidence and the denial of two requests to charge. Because the trial court did not err and some evidence supports the jury's determination that ACCC was entitled to withdraw coverage, we affirm.

1. The Vaughans enumerate as error the trial court's denial of their motion for summary judgment, arguing that as a matter of law ACCC could not have been prejudiced by its insured's failure to cooperate during magistrate court proceedings, because the appeal in superior court was de novo and by then the insured had promised to cooperate. However, when, as here, "a motion for summary judgment is overruled on an issue and the case proceeds to trial and the evidence at the trial authorizes the verdict (judgment) on that issue, any error in overruling the motion for summary judgment is harmless." (Citations and punctuation omitted; emphasis omitted.) *Weir v. Kirby Constr. Co.*, 213 Ga. App. 832, 836 (4) (446 SE2d 186) (1994).

2. The Vaughans contend that ACCC's evidence was insufficient to sustain the verdict and that the trial court erred in its evidentiary rulings during trial. Because those issues are related, we will address them together.

A party suing an insurer to collect on a judgment entered against its insured must first establish his right to recover pursuant to an insurance contract between the insurer and the insured. "The rights of a third person to sue on a contract made for his benefit depend on the terms of the agreement and are no greater than those granted by the contract as intended by the parties thereto." (Citation and punctuation omitted.) *Deal v. Chemical Constr. Co.*, 99 Ga. App. 413, 417 (108 SE2d 746) (1959).

Once a plaintiff establishes his right to payment of a judgment against the insured tortfeasor, the insurer may defend against the claim by showing that it properly withdrew its coverage of the underlying incident because its insured failed to cooperate in her defense. The insurer must show: (a) that it reasonably requested its insured's cooperation in defending against the plaintiff's claim, (b) that its insured wilfully and intentionally failed to cooperate, and

(c) that the insured's failure to cooperate prejudiced the insurer's defense of the claim. OCGA § 33-7-15 (b); *Liberty Mut. Ins. Co. v. Coburn*, 129 Ga. App. 520, 525 (3) (200 SE2d 146) (1973); *H. Y. Akers & Sons v. St. Louis Fire &c. Ins. Co.*, 120 Ga. App. 800, 804-805 (3) (172 SE2d 355) (1969). Once the insurer presents evidence that it was entitled to withdraw coverage, the burden shifts to the plaintiff to establish that the insured's failure to cooperate was justified. *Wolverine Ins. Co. v. Sorrough*, 122 Ga. App. 556, 557 (1) (a) (177 SE2d 819) (1970).

Further, in an appeal from a judgment entered on a jury verdict, this court will affirm the judgment "if there is any evidence to support it, and the evidence is to be construed in a light most favorable to the prevailing party with every presumption and inference in favor of sustaining the verdict." (Citation and footnote omitted.) *Freese II, Inc. v. Moses*, 301 Ga. App. 793, 794 (689 SE2d 98) (2009).

With this framework in mind, the record shows that the underlying judgment in this case arose from litigation over an automobile collision on June 25, 2006. Shakretius Watson was driving her grandfather's car when she ran into the back of a car in which Mr. Vaughan was the driver and Mrs. Vaughan was a passenger. The grandfather had insurance with ACCC, which determined that the collision was covered by the policy. After ACCC's adjuster made several unsuccessful attempts to contact Watson by letter or telephone, Watson called the adjuster on July 20, 2006, and confirmed her address. ACCC investigated the collision, and photographed the damages to the Vaughans' car.

On January 4, 2007, the Vaughans sued Watson in magistrate court, and ACCC hired an attorney to represent Watson. The defense attorney testified about the difficulty he had contacting Watson. After he tried to reach her by telephone, he sent her a letter and she called him, again confirming her address. The attorney sent Watson additional correspondence telling her when the magistrate court hearing was scheduled and tried to call Watson numerous times but was unable to contact her, and she did not come to court on May 8, 2007. The attorney moved for a continuance, but upon objection the magistrate court denied the motion and entered a default judgment against Watson as to liability. After a hearing the court awarded the Vaughans $8,664 in damages.

The defense attorney continued his attempts to contact Watson, and he filed an appeal to superior court to preserve her rights. On May 16, 2007, ACCC sent Watson a reservation of rights letter asking her to contact her lawyer by May 24, 2007. ACCC's deadline passed with no contact from Watson. A supervisor went to Watson's house and asked her grandfather to have Watson call ACCC. Finally, on

June 18, 2007, ACCC sent Watson a letter notifying her that it was withdrawing its coverage because she had failed to cooperate in her defense. The attorney wrote Watson, then filed a motion to withdraw as attorney of record and served Watson with a copy, but she did not respond. The superior court granted the motion to withdraw on August 6, 2007, and Watson did not appear at the superior court trial on October 30, 2007, when the Vaughans obtained a judgment against her for $9,007.

ACCC refused to pay the judgment, and the Vaughans filed an action seeking satisfaction of the judgment and other expenses. After a trial, the jury returned a defense verdict, which the Vaughans appeal.

While the Vaughans argue that ACCC never proved that Watson actually received any of the letters sent to her, it proved that the letters were sent and not returned. Further, Watson admitted that she had received letters from her defense attorney, that she had talked to him, that she moved in May or June 2007 but did not update her contact information, and that she did not have a "stable phone number for [her lawyer] to contact [her]." She also remembered her attorney saying that ACCC did not want to pay the judgment, but by then the car she had been driving had been wrecked and taken, "and the insurance didn't really matter anymore to me and my grandfather."

The Vaughans argue that ACCC did not establish that Watson's failure to cooperate prejudiced ACCC's ability to defend the claim, because Watson agreed to cooperate four months before the superior court trial. The superior court action was de novo, they contend, and therefore nothing that had happened up to the date Watson promised to cooperate would have prejudiced ACCC's ability to defend the claim. However, based on Watson's prior conduct, the jury was entitled to find that her promise to cooperate was not credible and that she would not have assisted ACCC in the superior court proceeding. Thus, her mere promise did not overcome the actual prejudice to ACCC in this case.

The evidence outlined above would support a finding that ACCC reasonably requested Watson's cooperation, that Watson wilfully and intentionally failed to cooperate, that her failure to cooperate was prejudicial to ACCC, and that her justification for failing to respond was insufficient. See *Liberty Mut. Ins. Co.*, 129 Ga. App. at 525 (3); *H. Y. Akers & Sons*, 120 Ga. App. at 804-805 (3).

3. The Vaughans assert that the trial court made numerous errors in the admission or exclusion of evidence during the trial and in denying two requests to charge.

(a) Before and during the trial, the parties disputed how much

evidence the jury should hear about the underlying car crash. The Vaughans filed a motion in limine asking the trial court to exclude any evidence about the underlying automobile collision, such as the amount of property damage, presence of a "phantom vehicle," and the absence of injury reports at the scene. They argued that this evidence was irrelevant, and even if it was relevant "on the issue of the insurer's need for Ms. Watson to be present at trial," its probative value was outweighed by the risk of prejudice and confusion to the jurors.

During the pre-trial hearing on the motion, the Vaughans clarified that they were not objecting to testimony by ACCC's litigation manager that he believed there were particular defenses to liability, only to the admission of evidence about the particular facts of the underlying collision. ACCC responded that, under OCGA § 33-7-15 (b), it was required to show that Watson's failure to cooperate materially prejudiced its defense, and the only way to do that was to introduce evidence about the underlying collision to prove that it would have been able to raise reasonable defenses if Watson had cooperated. After extended colloquy, the trial court denied the motion in limine.

"We review a trial court's ruling on a motion in limine for abuse of discretion. A motion in limine is properly granted when there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial." (Punctuation and footnote omitted.) *Shiver v. Ga. & Fla. Railnet*, 287 Ga. App. 828, 828-829 (1) (652 SE2d 819) (2007).

> A trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Dept. of Transp. v. Mendel*, 237 Ga. App. 900, 902-903 (2) (517 SE2d 365) (1999).

In response to the Vaughans' objections during the three-and-a-half day trial, the trial court had to determine how much evidence about the underlying collision to admit, balancing the interests of the parties. For example, the trial court allowed Watson and her defense lawyer in the underlying case to describe some particulars about the collision, but did not allow ACCC to introduce enlarged pictures of the damaged car. The court sustained objections when ACCC asked Watson to describe the damage or whether she was surprised there was an injury claim. It also sustained objections when ACCC asked its manager if an ambulance responded or whether anything about

the property damages would have contributed to ACCC's defense. When ACCC asked if the court was changing its earlier ruling and granting the Vaughans' motion in limine, the court responded that it was revising its response to the motion and ruling on the evidence as the trial proceeded and the evidentiary context became apparent. Finally, the court restricted ACCC's closing argument and directed it not to discuss any of the testimony related to the particular facts of the collision.

As the Vaughans note in their appellate brief, "The record is rife with examples of the trial judge's struggle throughout the proceedings to rule fairly on the admissibility of details concerning the underlying auto case," and they admit the issue is a "thorny one." ACCC had to present some evidence that Watson's failure to cooperate prejudiced its ability to defend against the Vaughans' claim, but the trial court excluded evidence about the details of the underlying collision that would have allowed the jury to second-guess the judgment awarded by the superior court. After reviewing the trial transcript in detail, we do not find that the trial court abused its discretion in its ruling admitting or excluding evidence.

(b) The Vaughans also argue that the trial court erred in declining to give their requested charge instructing the jury to limit its consideration of evidence about the collision to "whether Defendant was prejudiced by Ms. Watson's absence from trial of the underlying case," and directing it not to relitigate that case. The trial court explained during the charge conference that it was not going to give the charge because it would be confusing to the jury, which had not heard evidence about liability or causation in the collision case.

The refusal to give a requested charge is error if the charge is adjusted to the pleadings, the law, and the evidence, and the charge as a whole or the general charge does not substantially cover the principles embodied in the requested charge. *Ga. Dept. of Corrections v. Couch*, 312 Ga. App. 544, 551-552 (4) (718 SE2d 875) (2011). When reviewing the charge, this court applies the plain legal error standard of review. *Thompson v. Princell*, 304 Ga. App. 256 (696 SE2d 91) (2010).

Here, the trial court covered the principles embodied in the charge to the extent they applied to the evidence admitted. First, the trial court explained to the jury before any of the witnesses testified that it would not be "trying an accident," or determining whether someone was injured, only deciding whether the insurance company was relieved of its obligation to pay the judgment because the insured violated the contractual relationship. As previously discussed, throughout the trial the court balanced the admission of evidence about the underlying collision to allow ACCC to prove its defense but not unduly prejudice the Vaughans. Finally, its final

charge to the jury covered all of the relevant legal issues, instructing the jury that this dispute involved the Vaughans' attempt to collect a judgment against ACCC and that ACCC contended that its insured violated her insurance contract by not cooperating, which prevented ACCC from defending the case. It charged the jury on the definition of a contract; on the insured's contractual obligation to cooperate; on the insurance company's requirement to show that it reasonably requested cooperation and that the insured intentionally failed to cooperate in a way that prejudiced the insurer; and that if the insurer established those elements, the burden then shifted to the insured to justify her failure to cooperate. Accordingly, we find no error in the trial court's denial of this request to charge the jury to consider evidence about the underlying collision only as it related to whether Watson's lack of cooperation prejudiced ACCC in its ability to present a defense.

(c) Finally, the Vaughans contend that the trial court erred in declining to give their requested charge that an insurer that elects to participate in a trial by defending the action without giving the insured a "reservation of rights" notice is estopped from later denying coverage. An insurer avoids estoppel by giving timely notice of its reservation of rights fairly informing the insured of the insurer's position. *World Harvest Church v. GuideOne Mut. Ins. Co.*, 287 Ga. 149, 152 (1) (695 SE2d 6) (2010). In this case, ACCC gave timely notice to Watson, after the magistrate court action was filed and after the Vaughans received a default judgment because Watson did not appear for trial. When it hired defense counsel, ACCC had no reason to think it would be unable to contact Watson in the future, and no reason to reserve its rights at that time. The charge was not adjusted to the evidence, and the trial court did not err in refusing to give it.

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED MARCH 12, 2012.

*Joyce W. Bergman*, for appellant.
*Cruser & Mitchell, Craig P. Terrett*, for appellee.